## DOUBLEDAY *v.* ROESS.

*(Circuit Court, W. D. Pennsylvania.* July Term, 1880.)

1. PATENTS FOR INVENTIONS—WHAT NOT PATENTABLE.

The mere bringing together of old devices, without any new and useful result being produced by their co-operation, is not patentable.

2. SAME—COMBINATION—TUBING FOR OIL WELLS.

The combination in a patent for an improvement in tubular apparatus for deep wells, No. 50,919, being a mere aggregation of old devices, is not patentable.

In Equity.

ACHESON, D. J.  On the fourteenth of November, 1865, letters patent of the United States No. 50,919, for an "improvement in tubular apparatus for deep wells," were granted to M. J. Dickerson and Jacob Stuber.  H. H. Doubleday, having acquired by assignments the exclusive ownership of the patent in and for the county of Venango, Pennsylvania, on the third day of January, 1880, brought this action against Christian Roess, charging infringement within the assigned territory.  The patentees supposed, and the assumption pervades every part of their specification, that they were the original inventors of a mode of well packing by the use of a packing tube or casing exterior to and surrounding the eduction tube, the packing consisting of a seed-bag placed around the casing, at the desired point, closing up the annular space between the casing and the walls of the well, whereby a surface-water chamber separate from the eduction tube was formed.  This assumed invention was embodied in their first claim.  But, beyond all question, the patentees were not the inventors of that mode of well packing; it had been in previous use; and therefore, on December 29, 1879, the plaintiff filed in the patent-office a disclaimer of the first claim of the patent.  That left the second claim only, which is as follows:  "(2) The combination and arrangement of the steam-pipe, J, stop-cock, K, and packing tube, C, substantially as described."

Originally, oil wells and other deep wells were tubed with a single tube, through which the fluid was pumped, the packing or seed-bag surrounding it; and the specification of this patent states that where the wells are so packed, "if steam or air is used therein, the steam or air pipe must be carried through the seed-bag, and the hot steam will heat the pipe sufficiently to burn or shrink the seed-bag, causing it

to leak, so that the surface water will trickle through and injure and retard the working of the well." To avoid this supposed difficulty, the steam-pipe, J, is carried down between the eduction tube and the casing in the Dickerson and Stuber patent.

The evidence shows that the purpose of steaming oil wells is to melt and remove such paraffine as may have collected on the walls of the oil-bearing rock and promote the free flow of oil into the well. The beneficial effect of steaming was known at an early day. That oil wells were steamed prior to the Dickerson and Stuber invention, by means of a steam-pipe running down through the seed-bag, is plainly admitted by their specification; and that they were successfully steamed in that mode is, I think, satisfactorily shown by the evidence. Undoubtedly it was more convenient and preferable to carry the steam-pipe down between the eduction pipe and the casing instead of through the packing. Dickerson and Stuber, however, were not the first to apply a packing tube or casing to wells, and when they came to be cased it required no invention to carry down the steam-pipe through the open space between the tubes. No man of ordinary intelligence would have applied the steam-pipe to a cased well otherwise.

Of the function of the stop-cock, K, the specification thus speaks:

"K represents a stop-cock which is fitted into the head cover of the well, and opens into the well so as to let off any gas which may collect therein. A pipe is connected with this stop-cock which may be led off to the boiler or furnace, and the gas used for fuel or for other useful purposes."

In the defendant's oil wells, at the top of the casing, is a casing-head, in the sides of which are apertures to which are attached gas-pipes provided with ordinary stop-cocks. When the tubing and steam-pipe are in position the top of the well is gas tight, and the gas is led off by the pipes from the sides of the casing-head. The steam-pipe extends down the well, between the tubing and casing, to the oil rock, and is connected with the boiler. Between the boiler and the well a stop-cock is placed in the steam-pipe, so that steam can either be let into the well or shut off therefrom. The gas-pipe from one side of the casing-head is carried to the furnace of the boiler, so that the gas may be burned as fuel in order to raise steam in the boiler. The stop-cock on the gas-pipe is opened when it is desired to use gas from the well, and closed when it is desired to keep the gas in the well, and no use of it is necessarily made during the process of steaming, although, inasmuch as the gas is burned under the boiler, it may frequently happen, and it is generally the case,

that gas from the well is used under the boiler while the well is being steamed.

It appears, therefore, that the defendant has used and is using substantially the elements of the combination embraced in the second claim of the patent sued on; but whether he is answerable as an infringer depends upon the determination of the question whether the steam-pipe, J, the stop-cock, K, and the packing tube, C, form a patentable combination.

We have already seen that the packing tube, C, was old, and that the steaming of oil wells by means of a pipe running down through the seed-bag, connecting the boiler with the lower part of the well, was successfully practiced prior to the alleged invention of Dickerson and Stuber, and that it involved no invention to carry down the steam-pipe between the tube of a cased well. I need scarcely say that a stop-cock is one of the oldest and most common of devices, and is usually, if not necessarily, used wherever gas is conveyed by a pipe for use, either as fuel or for illuminating purposes. In fact no claim is here made for any one of the three devices singly. What, then, have we in this case but a mere bringing together of old devices without any new and useful result being produced by their co-operation? That such a combination is not patentable is well settled. *Hailes* v. *Van Wormer*, 20 Wall. 353; *Reckendorfer* v. *Faber*, 92 U. S. 357.

The result produced, it is said in *Pickering* v. *McCullough*, 21 O. G. 75, must be due to "the joint and co-operating action of all the elements," otherwise it is only mechanical juxtaposition and not a vital union. Id. I think the present is clearly a case of the mere aggregation of devices within the principle of the authorities cited. It is, indeed, insisted that the stop-cock, K, acts as a regulator of the gas pressure in the well with reference to the use of steam or air therein, and if *steam* is to be used the well should be free of pressure, which is effected by opening the cock; and the plaintiff's expert witness, Ruel W. Hall, ventures to express the opinion that a well cannot be steamed, or at least not with the best results, without opening the gas-escape cocks. But the specification of the patent does not assign to the stop-cock, K, the important function now claimed for it, and the evidence, I think, shows plainly enough that no such service is performed by it or is needed. When oil wells were steamed by a pipe running down through the seed-bag, there was no outlet whatever for the gas except through the valves of the oil pumps. Mr Porteous testifies: "I have never found it necessary to use any

appliances to facilitate the escape of gas while steaming my wells; and do not think it necessary to provide any means of escape for the gas in wells that would be benefited by steaming." Mr. Chandler testifies: "I never knew of a well where it was necessary, and cannot conceive of a well existing in which it is necessary, to have an exit for the gas when being steamed." These witnesses are experienced oil operators.

I am well satisfied from the evidence of the entire truth of the allegation made by the defendant in his answer, "that in steaming his wells he makes no use of the stop-cock on the gas-escape pipe, as he can properly steam his wells whether such stop-cock is opened or closed."

Let a decree be drawn dismissing the plaintiff's bill, with costs.